Thank you, Mr. Black, on behalf of the City Appellant, you may proceed. Good morning, Your Honors. Counsel, may it please the Court again, my name is Bob Black, a.k.a. G. Black, and I'm appearing on behalf of the City of Wheaton. This should be a matter of straightforward contract interpretation and construction of statutory construction of municipal law. It was not in the trial court. It got out of that venue when there was no reason to do so. Did the parties agree below that all these contracts, even read together, were unambiguous? I believe so. I don't think there was any question as to whether or not they were clear and unambiguous. The trial court did seem to rely on some of the parole evidence that came in, e-mails and things of that nature. Yes. So explain that to us. I don't know why the trial court relied upon the parole evidence here. There was no reason to do so. Well, he kept saying he had to do so because he wanted to determine the parties' intent, correct? Correct. And it's your position that under the four corners rule the intent of the parties was clear, correct? Absolutely correct. Then why was the language paid by the developer following the language that portion of real estate taxes removed from the side letter agreement? Well, as we sit here today on summary judgment, we can't really determine the why. And it's your position we don't need to, correct? It is absolutely my position that we don't need to. At that point, that language is surplusage. It doesn't matter for many reasons. Number one, the definition of the word itself, reimburse, the definition of the word reimburse, given its plain and ordinary meaning, is you have to pay something out first before you can be reimbursed. So using the language after that, reimburse the developer, to begin with, is surplusage. Morningside quotes a passage from the city's website that appears to suggest that the TIF developments, in TIF developments, the developer's costs are ultimately repaid from tax revenues generated from the development. How is this development different? I don't know that this development is different. My understanding and reading of the TIF statute is obviously the TIF taxes are collected from the district, the TIF district. They go back into redevelopment for the TIF district. It doesn't mean it's redevelopment for this particular project. It's for redevelopment of the TIF district itself. And getting back to your other question, if I may, Justice Burkett, about the removal of that word, the language, another reason beyond the primary dictionary definition of the word reimburse is, even if that were not the case, you've got the ordinance that has that language in it. You've got the ordinance referring to Exhibit 1 that has that language in it, reimburse the developer. You've got the ordinance referring to Exhibit 1, which then becomes a second amendment to the redevelopment agreement, which has the language in it. So if this was an issue, if the meaning of the word reimburse was not clear enough to begin with... Weren't there recitals in the side letter agreement also that talked about reimbursement? I'm sorry, Your Honor? Weren't there recitals to the side letter agreement that discussed reimbursement? Reimbursement to the city for the $1.3 million, reimbursement to the defendant for taxes paid? You know, I will be honest, Your Honor, the recitals was not something that I really spent my time looking at because I was always of the belief that recitals... Well, they don't control it, right? They don't control it. Yeah. I apologize for that because I really didn't... It's part of the law. Part of the law, correct. In air safety, the Supreme Court declined to adopt the provisional admission approach, which... That's correct. ...Morningside relies upon. Correct. But they did so because the contracted issue contained an integration clause. Correct. Did the Supreme Court in that case foreclose the provisional admission approach or just decline to adopt it in that case? In air safety, the Supreme Court said we're not going to utilize it in this case where there is an integration clause. It didn't say we're not going to adopt it forever in Illinois. It's not going to be used in Illinois. It did recognize that some appellate courts had used it. It did not go as far as to say it will not be used in Illinois. It did not rule those. No, it did not. It just said for this instance where there is an integration clause, provisional approach is not to be used. We do have the integration clause here. And I do note there was a second district case recently, and I believe it was... that this court said it wouldn't utilize the provisional approach. So what we have here... Okay. Under the TIF statute, the TIF statute gives a municipality its authority. Part of what its authority here is to contract with a developer based upon the needs and complexities of a particular development. So they have the authority, the ability to contract. And once they contract, the contract controls. This contract here has a series of points to it. Originally, Morningside is going to pay for the public utilities. The city then is going to reimburse Morningside for its outlayed costs for the public improvements. That's originally. Morningside then agreed to repay the city if it made a significant profit, which it did. The city in turn then agreed to reimburse Morningside if Morningside paid the real estate taxes, which it did not. But not to exceed the amount. Not to exceed the amount of the reimbursable public utilities. And as to that point, I see something about double recovery or this and that. Let's be clear about this. The TIF taxes, separate and apart from the reimbursable public utility costs. The reimbursable public utility costs arise on this project, are related directly to this project, are the expenses within this project. Morningside had them on this project. The city paid them back for them. They put a cap or maximum on them. These are particular to this project. The TIF taxes are for this TIF redevelopment district. So you have the initial valuation for a TIF district. And then you have the annual valuation for that district. And the difference between the two becomes what the real estate taxes related to the TIF are each year. They have to be assessed and evaluated. And that goes solely to that municipality. The underlying taxes go to all the taxing bodies within that TIF district. This level here only goes to the municipality. Those are to be used for redevelopment within the TIF district. Two different things we're dealing with here. Absolutely two different things. There's not a double payment. There's not something else going on here. I'm curious to know another point. The city, after the sale of the property, the city paid this first response back to Morningside, correct? Why was that? And what's the significance of that performance? Let me try and get my chronology down correct, Your Honor. Because at the, let me go back here. I'm not recalling, but after the sale. After the taxes were paid. After the taxes were paid. I think it was after Invesco paid the 2014 taxes, or at least part of the 2014 taxes. The plaintiff being the city, paid the defendant $333,000 in reimbursement for those taxes. I think that was part of the problem. At that stage, the city did not know that it was Invesco that had paid the taxes. There is nothing of record to show that the city knew that it was Invesco that had paid those taxes. The city knew that the taxes were paid. That's it. And we do have the answer to the counterclaim, were the city states. We did not know the purchaser paid those taxes. We referenced that in our reply brief. So, whoever paid those taxes, that was not of record who paid them at this point. In relation to that aspect of things, there is all this talk about the city knowing about this contract. That there is some unstated or unknown custom and practice type thing. Again, we're at summary judgment. And if you're going to enter summary judgment, you better have it of record that the city actually knew and actually had this contract. And there's no document. There's nothing. Nothing that shows that. Nothing shows that here. Nothing. Well, it has to be construed strictly against the movement, the factual interpretations, right? I don't believe so, Your Honor. Because what the case law says, the movement's right for summary judgment has to be free and clear. Free and clear from doubt. Right. Right. And we do have cross motions here. Absolutely. But if you're talking about something here where somebody is saying you knew about this and this component of knowing about it is part and parcel of entering summary judgment. You're relying upon that knowledge to enter summary judgment. Then it's incumbent upon you to show that knowledge, legally. But also, you know, so for purposes of summary judgment, there's also this reference to, well, you know, the purchaser, you've got to know the purchaser is going to be paying the taxes here. That's just kind of what happens. That's the way it is. All right. Well, the flip side of that is parties can contract any way they choose to contract and want to contract. They can prolate the taxes. They can do what they want here. So the fact that they contracted in this fashion, whatever the other side agreement or whatever they may be doing or not doing, they can choose to contract how they contract. And it may not always be this way. Or it may not always be that the purchaser is doing something. Or some of these real estate taxes could have been paid even before the date of closing. We don't know that. I mean, there's a whole different bunch of factors. And to enter summary judgment based upon some sort of nebulous, well, a purchaser would have paid it ahead of time. A purchaser would have paid it, you know, as a given fact. We just believe you can't do that. Morningside argues that the payment at the closing was an advancement for the taxes. Is the word advance anywhere? The word advance, I scratch my head. The word advancement doesn't appear anywhere within the contract. It doesn't appear anywhere within the contract documents. It doesn't appear anywhere within the TIF statute. Again, we have outlined for your honors the differences. Public utilities and the TIF taxes. Different things. It's not an advancement type thing. So I just, I mean, I obviously take issue with that kind of caricature. I've got a word right here. So, yeah, I don't know where advancement comes from, your honor. And we did touch upon, you know, this part about the side letter being the last agreement. Again, we believe the case law is clear that all of these things have to be read together as one transaction, one contract. The redevelopment agreement. The first amendment, which sets the cap on the reimbursable utility costs. The second amendment, which is actually part of the ordinance. So by municipal law, the ordinance is also part of this. And the side letter. It's all together. To say that the side letter is the last thing and that this last thing is the last agreement that controls, we believe just flies in the face of all rules of contract. We have to throw the integration clause out the window. Completely. Which is going to be my next point. What purpose would an integration clause serve if that were the case? I mean, the potential issue is by removing the words paid by developer from the side letter agreement, an ambiguity is created in this account that we're looking at the entirety of. Again, your honor, I don't believe so because of the definitive, the definitive, clear and ordinary meaning of reimburse. And also the fact that the phraseology is otherwise used in all these other places. I think that it's very clear and very apparent what this means. I see my time is up. I'll reserve the rest of my one more question. Morningside argues that you forfeited your argument regarding ultra various that the. That any decision to repay Morningside taxes would be contrary to the city ordinance. And do you believe that that argument was forfeited? We did not forfeit that your honor. In fact, our reply brief notes where we did argue that in the trial court insights to the record. The council argued that the city ordinance would have prohibited that. Correct. Correct. We can't. You can't. The city attorney can't enter something by the side letter that would be contrary to what the ordinance authorized. We can't waive a city ordinance. Can't do it. Thank you. Good morning, your honors. May it please the court. I'm Sean Collins here for Morningside. Good morning. Your honors, the city's position, I think, boils down to something that's unacceptable here, which is that the side letter means the same thing. Whether the words paid by developer are in the side letter or are not. Clearly, they are not. Do you find a case that interpreted the term reimbursement in a manner in which you argue in your briefs that reimbursement means something other than the common, ordinary understanding of reimburse? I'm fine with the dictionary definition of reimbursement. What dictionary definition? Some monies are returned to you after you paid them first. And I think that's precisely what's happening here. What was that that was paid first? Okay. $1.393 million. So upon the closing, as your honor is aware from the record, upon the closing, Morningside paid to the city $1.393 million. That's not the precise dollars. That is the payback for the utility costs. Well, and then also they were given a release of their obligations. But there was a mechanism then put in place that Morningside would get monies from the city after that. And that's the term, that's the way in which the city and the parties, really, and all of their documents are using the word reimburse. In other words, and even by the way, even under the city's interpretation of what's going on here, all right, Morningside is getting money back from the city out of the real estate taxes that are paid subsequent to the closing. That's what reimburse means. Paid by who? I'm sorry? Paid by who? Well, the side letter, which is the party's last expression of their intent and also is clear in all the documents, is intended to be the party's last. All the documents except the side letter have the language paid by the developer. Would you agree? The city ordinance as well, correct? Well, the ordinance says not explicitly no judge. Certainly, the Second Amendment does. Right, which is attached to? As Exhibit 1. We read them all together, correct? Yes. And I think that that requires a finding from Morningside in this way. The documents, if I may, the three documents here, one is the Second Amendment. Let me ask you. Sure. Throughout your brief, as part of this argument, throughout your brief, you used the term advance or advancement. Where in any of the language of any of the documents is the word advance or advancement? It's not there, which is why I thank you for the question, but it's why we didn't put the word in quotes on it. We put it there to describe what's happening. Okay, and that is that the Morningside is providing the city funds, $1.393 million incident with the closing, but clearly they're going to be paid back. The side letter was required to incorporate what was permitted by the ordinance, correct? Yes. Yes. And look, we're not trying to run from the ordinance. We embrace the ordinance. The ordinance has to be honored here. There's no question. But all of the ordinance, okay, not just the part that the city favors, because the ordinance does say, and when we take these three documents together, a sequence is being described. We've got, first, the Second Amendment. Your Honor is absolutely right. It is Exhibit No. 1 to the ordinance. Then we have the ordinance, and then we have the side letter. But how do we get to the side letter? And I think the ordinance makes clear. It says under Section 3, it says that the side letter shall be prepared by the city's attorney and contain those terms as set forth in Exhibit 1, which is the redevelopment agreement. But then it goes on to say if we're going to honor the ordinance, we've got to honor the whole thing because it explains what happened next. As well as any other terms necessary to effectuate its intent and application as determined by the city attorney. And then your honors know what happened next because in its opening brief, the city told you at pages 6 and 33 what happened next, which is how the side letter came to be. And the city's initial draft had the words paid by the developer, and Mourning struck it through and added some other terms to the side letter and provided it to the city's attorney. The city's attorney, who was the one specifically empowered by this ordinance to determine what additional terms needed to be added to effectuate the intent. Of course, all that evidence is parole evidence. I'm sorry? All that evidence is parole evidence that the trial court considered. It is, Judge. It is. And I would say that we don't need to resort, and I have said, we don't need to resort to parole to conclude for Mourning's side. This case started out, as your honors just mentioned in your discussion with counsel, for the city, both sides filed for summary judgment. Both sides thought that there was enough to resolve before we even got to discovery. And what I would say is this, without resort to parole, if you look at that side letter, and that side letter itself has an integration clause, and it's very clear. The side letter doesn't say paid by the developer. It says reimbursement. I'm sorry? It says reimbursement. To Mourningside. Yes. In the same paragraph that it says that $1.393 million is to be paid by Mourningside to the city. Do you agree that the redevelopment agreement, its amendments, and the side letter all constitute a single contract for purposes of our interpretation? I do. I do. Do you disagree with air safety that the integration clause does not preclude us from considering parole evidence? I think your honors, as any review in court, has an obligation to make sure we don't reach an absurd result here. What's absurd here? Well, that a contract means the same thing whether the word is paid by the developer or not in it. Reimbursement of taxes and then reimbursement of taxes paid by the developer, how are those, you know, how can you read that as saying reimbursement means something different when you remove the words paid by the developer? Reimbursement of the taxes. I apologize. How is that? Because I looked at several definitions of the term reimbursement. Reimbursement, you get reimbursed when you have paid something or you have lost something. What did Mourningside lose or pay? The Mourningside. Go ahead, Mr. Judge. I'm sorry. Go ahead. What did they lose or pay? As is clear. With respect to the taxes. Mourningside paid $1,393,000 and as it says. Those were the utility costs. Well, those were the costs that had been provided by cover, if you will, by the city in connection with the redevelopment. And so ordinarily, if it hadn't been for the sale, ordinarily Mourningside would have repaid those through taxes that it paid for the years 2014, 2015, etc. But what happened was, because of the closing and because Mourningside needed, in order to effectuate the closing, it needed the release of its obligations under the settlement agreement. The parties negotiated and agreed that Mourningside would pay the $1,393,000,000, the monies provided by the city for the development, would pay them in connection with the closing. But then comes the rest of it. And the rest of it is how would Mourningside be reimbursed for the $1,393,000,000? Now, the second amendment that authorized the side letter said, had the language, paid by the developer. Yes, sir. Yes, it does, Your Honor. The side letter then, which would have authorized paying the taxes back to Mourningside, would have violated that second amendment, would it not? Well, only if we forget the ordinance here, which is an important part of the contractual sequence. I would certainly agree, if the last word here is the end of it, if there were no ordinance, if there were no side letter, and we stopped at the second amendment, the city wins. But that's not what happened. The ordinance tells us what happened. The ordinance says that the, with reference specifically to the second amendment, that the city's lawyer is authorized by the city council to add any terms to the side letter that are necessary to effectuate its intent and application. And then that's what he did. And you'll notice here that the city is not saying, it didn't say in its argument, it's not said in any of its briefs to Your Honors, that what the city's lawyer did was beyond the authority, that when he agreed to the striking of paid by the developer, that that was beyond the authority given him by this ordinance. In the trial court and in your briefs, you keep saying that the city knew about and had knowledge that the taxes were being paid by Invesco. Where's the fact and evidence of that? Where's the evidence? Well, because it knew that after the closing, the purchaser would be the owner and the purchaser would be the one obligated legally to pay the taxes. But Judge, it doesn't matter here. I'm asking you a question. Tell me in the record, where is that? Where does that fact appear that the city knew Morningside was not paying the taxes? New Morningside was not paying the taxes. Where in the record is that? I haven't cited to a document. There is no document, correct? Well, not in the record. Yes. You agree parties can contract away. I mean, they could have contracted in the real estate deal that Morningside would pay the taxes, at least the full 2014 taxes. Well, I think they do prorations. I am unaware ever of contracting away the obligation to pay the taxes. I am very familiar with adjustment of purchase prices. But the owner of record at the time the taxes are due is the one legally obligated to pay. And that's what happened here. Now, something very interesting the counsel for the city said, which I think is critical here, and I think acknowledges what went on. So what counsel told you was the city, apparently even through the time of briefing, still doesn't know who paid those 2014 taxes in 2015. And I think that's an admission that shows, among other reasons, why Morningside should win here. And why is that? Because the city didn't care who paid. Because under the side letter, its obligation to reimburse Morningside for taxes paid didn't depend on who initially paid them. That's why the city, even to this day, evidently, at least claims to not know who made that payment. It didn't care. Because under the side letter, it didn't matter. Once you take out the words, paid by the developer, and there's no argument here that the city attorney struck those as an act beyond his legal authority. Under your interpretation, the meaning of reimbursement changes between the second amendment and the side letter, right? Right? Specifically. No. Read. No. Read the definition of reimbursement changes, right? No, Your Honor, but if I may explain, please. Under whether you're talking about the second amendment or you're talking about the side letter, there is still a mechanism in place for Morningside to be reimbursed. Now, who is obligated to pay the taxes that triggers the obligation to reimburse does change from the second amendment to the side letter by operation of the power vested in the city's lawyer by the ordinance. But under both the second amendment and the side letter, Morningside, there is a provision for Morningside to be reimbursed. And so, Mr. Justice Burkett, the city says that, too. It's just that the city says there's a different trigger mechanism for the reimbursement, but they would say reimburse, too. And I think clearly in context, when either side talks about or what matters is when the documents talk about reimburse, they're talking about reimbursement for the $1.393 million that Morningside paid at the closing. So the definition of reimbursement didn't change. What changed between the second amendment and the side letter agreement was reimbursed for what? Yes, Your Honor. Yes, exactly. The trigger mechanism did. Under the second amendment, it did say the taxes had to be paid by the developer. That's clear. But then we go to the ordinance that says, Mr. Attorney, please take Exhibit 1, which is the second amendment, and then include any other terms when you're moving from the second amendment to the side letter. And the ordinance is how you get there. When you're moving from the second amendment to the side letter, also include any other terms necessary to effectuate the intent and application, and that's to be determined by the city's lawyer. So this ordinance, I think, is Section 3 particularly, is absolutely clear evidence that the city knew and acknowledged that the second amendment was not the final word. Otherwise, why would this – why would the ordinance say authorize the city lawyer to add any other terms necessary to effectuate the intent? If it wasn't – I'm sorry. Let me ask you a funny question. I apologize. As was alluded to by Justice Breyer, there seems to be disagreement as to what the defendant was intended to be reimbursed for. If that's the crux – part of the crux of the dispute, why isn't that a tribal issue? Why would summary judgment be appropriate? We have these differing theories and arguments going back and forth. How is summary – how is the defendant's right to judgment free and clear with all of these factual disputes? Well, Your Honor, I don't think there are factual disputes, at least not genuine and material factual disputes. I think the documents are quite clear what happened here and what the results should be. And I think it's exactly as the trial court found, right? The parties authorized the lawyer to make changes to the Second Amendment to get to the – to get to the side letter. That's what he did. One of the changes was he explicitly struck the words paid by the developer. And so, really, I think the questionnaire is very important, but I don't think it's particularly complicated. Isn't that meaningful? But how do we know why the words were struck? I'm sorry? How do we know why these words were allegedly intentionally struck, according to you? Well, with respect, Judge, I don't believe it matters because that's the document we're left with. And it's the city – and I don't have a dispute with it – that is making the four corners argument. So if, indeed, the four corners argument is to count for anything, it should be the words on the page matter. And the words on the page, as the last expression of the party's intent is, paid by the developer is out. And it's not just out, but it used to be in and then got taken out. We're not talking about an original drafting where the words weren't included. Originally they were and then explicitly struck. In the Second Amendment, reimbursement means reimbursement for taxes paid by the developer, correct? That's what it says, yes, Your Honor. But in the side letter, your argument is reimbursement means reimbursement for the $1.3 million that the developer paid at closing. Your Honor, I believe reimbursement means the same thing in the Second Amendment versus the side letter. I do agree the trigger mechanism for reimbursement changes. The trigger mechanism for reimbursement from the city to Morningside in the Second Amendment is Morningside has to pay the taxes. But the side letter, not so. It doesn't matter who pays the taxes. Does the side letter reference at all the reimbursables and utility costs? It does, yes, Your Honor. And where? In the third whereas clause. It talks specifically about the $1,393,000 and it abbreviates it the same way as RFP. Which shall not exceed, right, that language? Yes, and I think that's further proof of law. And that's if it's paid by the developer. Not in the side letter. Isn't the result in the trial court at odds with the goal of a successful TIF project where private investors like your client are helped by a reduction in development costs and risks? Correct. I think this is a spectacular success story. And public investors are helped by generating additional revenue available, and public investors, it's the city itself, to have that extra tax generated at the end of the TIF project to redistribute throughout the TIF and continue to grow the city, right? Your Honor, I think if… Why would the city agree to give back to Morningside money that they didn't pay? Morningside did pay it. Your Honor, they paid the $1,393,000,000. And the other thing, too, is, to address your point, Your Honor, is this is a spectacular success story because what the city of Wheaton has now is a multi-million dollar tax annuity where it had vacant land before. Because Morningside showed up. The enduring beneficiary of what happened here is the city of Wheaton. By many, many, many millions of dollars. Did the city take a risk, though, by fronting the utility costs, the $1.3 million, and then seek to recoup it if this was a success, a financial success for Morningside? It certainly took a risk. It took the risk that this wouldn't work out and it wouldn't get its money back. It certainly did, right? And then when it came time for Morningside said, we need a release so we can sell this, we need a release of our obligations, the city obviously said, okay, well, then you need to pay us now. And that's going to be the price of your getting your release now. And then this reimbursement mechanism was established. But I think with probably with every tip, and I don't know if more in this instance than in other instances, Your Honor, but absolutely correct, the city took a risk. I guess I'm just saying, the city takes a risk and lays out this $1.3 million in utility costs, then it benefits as financial success, and then they get it back, and then you say they've agreed to pay it back again to Morningside. Well, that is what the documents say, yes. We're talking about, you know, what makes sense, and I'm just trying to make some financial sense. Well, I think we are, Judge. The other part of this deal, which is in the papers, we really haven't spoken about here. One final point. I'm sorry. You argued in your brief that the city forfeited their argument that the side letter, if it's interpreted in the manner that you suggest, would be ultra-various, that the city's ordinance did not commit it. On that point, the city ordinance required that the side letter shall contain those terms as set forth in Exhibit 1, the Second Amendment, and the Second Amendment did say, reimburse developer for that portion of the real estate taxes paid by the developer, correct? There's more to the ordinance. Am I correct? As far as those words are in the ordinance, but there's more to it I would contend are not only relevant but really important and explain exactly what happened here, how we got to the side letter. Because if the side letter were supposed to just contain everything that was in the redevelopment in the Second Amendment, you wouldn't need the side letter. Why did you need the side letter if it's supposed to contain everything that was in the Second Amendment? And the explanation is that last clause, the city attorney being empowered to make whatever changes are necessary to effectuate the intent. And that's how we get to the side letter. Mr. Collins, you've gone well over the time limit, so we appreciate your argument. Thank you. I appreciate the opportunity to be heard. Thank you. All right. Thank you. Mr. Black, you may address the court in rebuttal. Counsel for Morningside says that the city attorney is empowered to make whatever changes are necessary to effectuate intent in the side letter. Let's be clear. A side letter that says the change is a trigger mechanism, that says you're going to be paid not if you pay the taxes, but if you pay the reimbursable expenses, is a substantial change. A substantial change. A side letter that is different from the Second Amendment that says we're going to pay you back the 1.06 million in real estate taxes even though you didn't pay the real estate taxes is a monumental change. Would the city be surprised to learn that you had that power? I'd say, be a guess. It would fire. I'm dumbfounded. I'm dumbfounded. This is not even remotely within what is necessary to effectuate the intent here. This is ultravaries in capital letters. Let's go right back to the language of the side letter. And I'm happy to be bound by that language of the side letter. I will go back to the record also with the clerk of the city in her affidavit stating there was nothing that changed the intent and purpose of this city council when it adopted the ordinance, which includes the Second Amendment, as Exhibit 1, in which it references the side letter. The side letter says you will be reimbursed for the real estate taxes that you pay. Simple as that. The comment was made that the city still doesn't know what's in this contract and still doesn't have the contract. Let's be clear on this also. What we're talking about is everything at the time of closing. If we're going to go outside the record, okay, city got the contract afterwards. Afterwards, we know what's in the contract. We know what it's about. We're talking about a time of closing. So let's be clear on that also. Okay? That's what we're talking about here in terms of summary judgment. We will stand on what each and every one of these documents state together, taken as one transaction. We will stand on exactly what they say in progression. We will stand on the fact that you cannot go outside these documents according to accepted Illinois case law by the Illinois Supreme Court where there is an integration clause. There's also a clause for costs and fees in the Second Amendment, I believe. So if we were to agree with your position, are you going to be seeking attorney's fees and costs? I will be candid, Your Honor. Since I did not discuss that with the city, I can't make that representation. I would – well, I'm not going to speculate. So we will stand on everything. You can't go outside. You can't talk about what emails – you're attaching emails with red line versions. They don't matter. But you certainly cannot try and throw in intent or what they meant by this. Well, can't we, looking at the four – just the four corners, can't we presume that the removal of paid by the developer was an intentional removal? I don't believe so. But even if you can presume that it was an intentional removal, can you take the next step and say it was intended to mean something beyond what it meant all along or intended to mean something beyond what the dictionary definition is? I don't think you can make that second step. Not from what we have. Not from what we have in the four corners. So even if you were to say, okay, they intended to remove it, fine. This is part and parcel of their negotiation. What does it mean? It's still otherwise elsewhere within all these documents, and it's still – you still are faced with what the word reimburse or the word reimbursement means. So therefore, Your Honors, we would ask that the summary judgment in favor of Morningside be reversed. And we would ask that summary judgment be entered in favor of the city of Wheaton, bringing out a belief that this court deems necessary, just, and appropriate. If there's not anything else. I don't believe so. Thank you, Your Honors. Thank you. I'd like to thank both sides for the quality of their arguments here this morning. We appreciate it sincerely. The matter will, if necessity, be taken under advisement, and a written decision on this matter will issue.